UNITED STATES v. PRESBYTERIAN HOSPITAL.

(Circuit Court of Appeals, Second Circuit. January 16, 1896.)

No. 1,731.

CUSTOMS DUTIES—SCIENTIFIC INSTRUMENTS—ACT OCT. 1, 1890.

The term "scientific instruments," in the free list of the tariff act of October 1, 1890, is intended to refer to the intrinsic character of the thing imported itself, and not necessarily to the nature of the use for which it is primarily designed or in which it is principally employed, and to apply to an instrument which is something more than a mere mechanical tool, and which embodies some scientific conception. Accordingly, *held*, that the mere fact that imported articles were designed for use by physicians and surgeons was not sufficient to bring them within the category of scientific instruments.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was an appeal from the decision of the circuit court reversing the decision of the board of general appraisers concerning certain articles imported by the Presbyterian Hospital in the city of New York. Reversed.

Wallace MacFarlane, U. S. Atty., and James T. Van Rensselaer, Asst. U. S. Atty., for the United States.

Stephen G. Clarke, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This case involves the proper classification for duty under the tariff act of October 1, 1890, of certain articles imported by an institution established for educational purposes, as well as for a hospital. The articles were imported, not for sale, but for the use of the institution in connection with its clinics and training school, and were adapted for use by physicians and surgeons in the treatment of diseases or physical injuries. They were classified for duty by the collector as "manufactures of glass," and "manufactures of glass and metal, metal chief value," under the provisions of the act fixing the duty upon such manufactures at 60 and 45 per centum ad valorem, respectively. By the protest of the importer it was insisted that they were exempt from duty under the provision of the free list which reads as follows:

"Philosophical and scientific apparatus, instruments and preparations, statuary, casts of marble, bronze, alabaster or plaster of paris; paintings, drawings and etchings specially imported in good faith for the use of any society or institution incorporated or established for religious, philosophical, educational, scientific or literary purposes, or for encouragement of the fine arts, and not intended for sale."

The board of general appraisers affirmed the action of the collector, being of the opinion that the articles were neither philosophical nor scientific apparatus or instruments, but were mechanical instruments, implements, etc., designed for the use of physicians and surgeons in the practice of their profession. Upon appeal the circuit court was of opinion that the articles, being designed for use in medical science, were within the provision of the free list, and reversed the decision of the board.

The question which we have to decide is whether such articles are "scientific instruments," within the meaning of the provision. The term is a very vague one, and there is nothing in the context or in the previous legislation of congress which assists in ascertaining its precise significance. If astronomical instruments, nautical, surgical, musical, or various other kinds of instruments, had been enumerated, there would be no difficulty in classifying them. We should understand them to include any of those instruments originally adapted for and commonly used by astronomers, musicians, etc., in the pursuit of their vocations. Under a former tariff act, which imposed a duty upon "philosophical apparatus and instruments," it was said by the supreme court that many instruments "merely mechanical are constantly used as aids in carrying on observations and experiments of a philosophical character"; and it was held, in substance, that only such were within the enumeration as were more commonly used in philosophical observations and experiments, as distinguished from those more commonly employed in the arts. Robertson v. Oelschlaeger, 137 U. S. 436, 11 Sup. Ct. 148. By

analogy, it might be said that a scientific instrument is one which is primarily adapted for the use of, and principally used by, the professors of science in experiment or demonstration, or by the practitioners in any of those branches of applied science which in strict definition are arts. But the term "philosophical apparatus and instruments" is more explicit than the term in question. If congress had intended to exempt from duty all professional apparatus and instruments, it could have made such a provision, and the meaning would have been intelligible. The term "scientific instrument" does not describe one appertaining to any particular vocation or profession. It suggests an instrument which is something other than a mere mechanical tool or appliance, however peculiarly adapted to use it may be in scientific labors; one which, because it embodies some scientific conception, would attract the interest of learned minds; something as distinct from the ordinary mechanical instrument as is the scientific toy from ordinary toys. There are many instruments which are designed for use, and which are principally used in the practice of the learned professions, which are not scientific instruments in common acceptation. Among the articles in controversy were some ordinary metal tubes, a wire mask, covered with flannel, and some glass spools for holding wound catgut.

We think the term "scientific instrument" is intended to refer to the intrinsic character of the thing itself, and means any instrument which, in ordinary definition or the acceptation of experts, would fall within that category; and that, in cases arising under the statute, what is or what is not such an instrument is to be determined as a question of fact, according to the nature of the thing itself, and not necessarily according to the nature of the use for which it is primarily designed or in which it is principally employed.

In this case the board of general appraisers have found as a fact that the articles in question are not scientific instruments, but are mechanical ones, designed for the use of physicians and surgeons in the practice of their profession. It is apparent, however, from the opinion of the board, that this finding, although stated to be one of fact, is a finding of law, based upon the theory that mechanical and professional instruments are synonymous terms. The evidence in the record indicates that, with the exception of the tubes, the mask, and the glass spools, the articles are "scientific instruments" within the meaning of the statute, as we have interpreted it. We cannot accept the view taken by the judge of the circuit court, that all of the articles in controversy were exempt from duty because they were made for the use of physicians and surgeons in the practice of their profession, although we agree with him that congress, by adding the term "scientific" to the enumeration in former acts of "philosophical apparatus and instruments," intended to enlarge the category of favored articles.

The decision of the circuit court must, accordingly, be reversed.