**In re MASSACHUSETTS GENERAL HOSPITAL.**

(Circuit Court, D. Massachusetts. July 7, 1899.)

No. 668.

CUSTOMS DUTIES—CLASSIFICATION—SCIENTIFIC INSTRUMENTS.

Surgical instruments, specially designed and adapted for use in surgery, are "scientific instruments," and as such, when specially imported in good faith by a general hospital, established, among others, for educational purposes, for use in its clinics and training school for nurses, are entitled to free entry, under paragraph 585 of the tariff act of 1894 (28 Stat. 543).

Gaston & Snow, for petitioner.
Boyd B. Jones, U. S. Atty.

COLT, Circuit Judge. This is an application by the Massachusetts General Hospital for a review of the decision of the board of general appraisers, affirming the action of the collector of the port of Boston in the assessment of duties on a case of surgical instruments entered October 28, 1895. The duties were assessed under paragraph 177 of the tariff act of August 27, 1894 (28 Stat. 520):

"Manufactured articles or wares, not specially provided for in this act, composed wholly or in part of any metal, and whether partly or wholly manufactured, thirty-five per centum ad valorem."

The petitioner, in its protest, claimed that the articles should have been admitted free of duty under paragraph 585 of the free list (28 Stat. 543), which reads as follows:

"Philosophical and scientific apparatus, utensils, instruments and preparations, including bottles and boxes containing the same; statuary, casts of marble, bronze, alabaster, or plaster of Paris; paintings, drawings, and etchings, specially imported in good faith for the use of any society or institution incorporated or established for religious, philosophical, educational, scientific, or literary purposes, or for encouragement of the fine arts, and not intended for sale."

The evidence shows that the surgical instruments in question were imported in good faith for the use of the Massachusetts General Hospital in its clinics and training school for nurses; that they were specially designed and adapted for use in surgery, and were such instruments as were ordinarily used by surgeons in the practice of their profession. The experts testified that they were scientific instruments, for the reason that surgery is a science, and the instruments were specially designed for use in surgical operations. There was no evidence that the instruments were used for any other purpose. The question presented is whether ordinary surgical instruments are "scientific instruments," within the meaning of the statute.

The answer to this question is not free from difficulty. By one rule of interpretation, an instrument may be classified as scientific, by reason of its use in a particular science, for which it was primarily designed and is principally employed. By another rule of interpretation, an instrument may be classified as scientific, according to the intrinsic character of the instrument itself, and without regard to its use. Further, an instrument which at one time may have been properly classified as scientific may, by reason of its common use in

the trades and arts, cease to be so considered, and become generally recognized as merely mechanical.

. The tariff act of 1883 (22 Stat. 513, c. 121) contained the following provision:

"Philosophical apparatus and instruments, thirty-five per centum ad valorem."

Under this provision the meaning of the words "philosophical apparatus and instruments" was construed by the supreme court in Robertson v. Oelschlaeger, 137 U. S. 436, 438, 11 Sup. Ct. 148. In that case Mr. Justice Bradley, speaking for the court, said:

"There is undoubtedly a clear distinction between mechanical implements and philosophical instruments or apparatus. * * * It is somewhat difficult, in practice, to draw the line of distinction between the two classes, inasmuch as many instruments, originally used only for the purpose of observation and experiment, have since come to be used, partially or wholly, as implements in the arts; and, on the other hand, many implements merely mechanical are constantly used as aids in carrying on observations and experiments of a philosophical character. The most that can be done, therefore, is to distinguish between those implements which are more especially used in making observations, experiments, and discoveries, and those which are more especially used in the arts and professions. For example, an astronomical telescope, a compound microscope, a Rhumkorf coil, would be readily classed as philosophical instruments or apparatus, while the instruments commonly used by surgeons, physicians, surveyors, and navigators, for the purpose of carrying on their several professions and callings, would be classed among mechanical implements, or instruments for practical use in the arts and professions. In short, philosophical apparatus and instruments are such as are more commonly used for the purpose of making observations and discoveries in nature, and experiments for developing and exhibiting natural forces, and the conditions under which they can be called into activity; while implements for mechanical or professional use in the arts are such as are more usually employed in the trades and professions for performing the operations incidental thereto."

In that case, a small microscope, used for examining textile fabrics, was held to be a mechanical instrument, while a compound microscope was held to be a philosophical instrument; a common magnifying glass, used for reading print, was held to be a mechanical instrument, while a magnifying glass, with a Coddington lens, was held to be a philosophical instrument; an ordinary thermometer was held to be a mechanical instrument, while a thermometer with an arrangement for recording the maximum and minimum temperatures was held to be a philosophical instrument.

By paragraph 585 of the act of 1894, congress added the word "scientific" to "philosophical," and admitted free of duty—

"Philosophical and scientific apparatus, utensils, instruments, and preparations, including bottles and boxes containing the same; statuary, casts of marble, bronze, alabaster, or plaster of Paris; paintings, drawings, and etchings, specially imported in good faith for the use of any society or institution incorporated or established for religious, philosophical, educational, scientific, or literary purposes, or for encouragement of the fine arts and not intended for sale."

. This whole provision is much broader in scope and purpose than the earlier statute of 1883, relating to philosophical instruments. It was the evident intention of congress, by this act, to aid the advancement of knowledge by admitting free of duty philosophical and scientific instruments and works of art, used for the purpose

of instruction, observation, experiment, or discovery, by institutions organized for the promotion of science, learning, and the fine arts.

This provision came before the court in U. S. v. Presbyterian Hospital, 18 C. C. A. 338, 71 Fed. 866, 38 U. S. App. 201. That case was similar to the present case. It involved the proper classification of certain articles imported for the use of a hospital, "in connection with its clinics and training school, and [which] were adapted for use by physicians and surgeons in the treatment of diseases or physical injuries." The board of general appraisers in that case, following the distinction between "philosophical" and "mechanical," laid down in Robertson v. Oelschlaeger, held that the instruments were mechanical, because they were used by physicians and surgeons in the practice of their profession. The circuit court reversed that decision, holding that all the articles were scientific instruments, because designed for use in medical science. The circuit court of appeals reversed the decision of the circuit court, upon the ground that:

"The term 'scientific instruments' is intended to refer to the intrinsic character of the thing itself, and means any instrument which, in ordinary definition or the acceptation of experts, would fall within that category; and, in cases arising under the statute, what is or what is not such an instrument is to be determined as a question of fact, according to the nature of the thing itself, and not necessarily according to the nature of the use for which it is primarily designed, or in which it is principally employed."

Following this interpretation of the statute, the court of appeals decided that part of the articles in question were scientific instruments and part were not. This rule of interpretation is seemingly in conflict with Robertson v. Oelschlaeger, where the supreme court adopted the rule of "principal use," rather than "intrinsic character," with respect to philosophical instruments. Further, there are practical difficulties in the way of satisfactorily determining, by the testimony of experts, whether each imported article is or is not a scientific instrument, by reason of the intrinsic character of the thing itself. Moreover, this construction does not seem to effect the purpose of the statute, which is to aid the advancement of science and the fine arts by the admission free of duty of the means or instruments necessary to that end.

The main contention of the government in the present case is that the language used by the supreme court in Robertson v. Oelschlaeger respecting "philosophical instruments" is applicable to "scientific instruments," under paragraph 585 of the act of 1894, and that the articles in question should be classed as mechanical instruments, because their principal use is by surgeons in the practice of their profession. On the other hand, the importer claims that they should be classed as scientific instruments, because surgery is a science, and the instruments are specially designed for use in medical science, and are primarily employed for such purpose. The case of Robertson v. Oelschlaeger related to the construction of the term "philosophical instruments" in the act of 1883, which assessed a duty of 35 per centum ad valorem on such instruments. The present case relates to the construction of the term "scientific instruments" in the act of 1894, which admits free of duty philosophical and scientific instru-

ments, imported for the use of institutions organized for educational and scientific purposes.

As there is a distinction between philosophy and science, so there may be said to be a distinction between philosophical instruments and scientific instruments. Philosophy has reference "to the fundamental part of any science,"—to "general principles connected with a science, but not forming part of it." Science, on the other hand, signifies "knowledge, coördinated, arranged, and systematized." It is knowledge "gained by systematic observation, experiment, and reasoning." Philosophical instruments, as defined by Mr. Justice Bradley in Robertson v. Oelschlaeger, are such as "are more especially used in making observations, experiments, or discoveries"; or, more specifically, "philosophical apparatus and instruments are such as are more commonly used for the purpose of making observations and discoveries in nature, and experiments for developing and exhibiting natural forces, and the conditions under which they can be called into activity." Scientific instruments may be said to be such as are specially designed for use, and principally employed, in any branch of science. Such use may be for the purpose of observation, experiment, or instruction, or it may be a use in connection with the professional practice of a particular science. The use of a surgical instrument by surgeons in the practice of their profession is as much a strictly scientific use as when it is employed in clinics and training schools, or for the purpose of experiment. All these uses are equally scientific, because they specially concern a particular branch of science. The use of philosophical instruments, from the nature of the subject to which they relate, may be said to be limited to observations, experiments, and discoveries, while the use of scientific instruments, from the nature of the subject to which they relate, may extend to other purposes.

Under the doctrine of "principal use," laid down in Robertson v. Oelschlaeger, an instrument is not to be classed as philosophical, but mechanical, when its principal use is in the arts, trades, or professions, because such use is not philosophical. So it may be said that an instrument is not to be classed as scientific, but mechanical, when its principal use is in the trades or arts, because such use is not scientific. The language of Mr. Justice Bradley in Robertson v. Oelschlaeger, respecting what instruments would be classed as mechanical, must be taken in connection with the question before the court, which related to "philosophical instruments" in the act of 1883. A strict application of the language used in that case, in drawing the distinction between "philosophical" and "mechanical" to the present case, is to make "philosophical instruments" and "scientific instruments" convertible terms, or to mean the same thing. It also results in giving a narrow and illogical construction to this provision of the statute. To hold that an instrument specially designed and adapted for use in medical science is to be classed as scientific when principally used in surgical operations in clinics and training schools, and is not to be so classed when commonly used by surgeons in the same operations in the practice of their profession, does not commend itself to reason or to common sense.

Looking at the whole of paragraph 585, and giving to it a construction in accordance with what seems to have been the intention of congress, the term "scientific instruments" means instruments specially designed for use in any particular science, and which are principally employed for such purpose; and, surgery being a science, it covers the surgical instruments in question in this case, which were imported for the use of the Massachusetts General Hospital in its clinics and training school. The fact that such instruments are employed by surgeons in the practice of their profession does not make them mechanical instruments. Instruments of this kind, in our opinion, are scientific instruments, within the meaning of the statute, until it is shown that their principal use is in the trades and arts. For example, an ordinary knife is a mechanical instrument, because its principal use is in the trades and arts, while a surgeon's knife, specially designed for use in surgery, and principally used for such purpose, is a scientific instrument. As applied to scientific instruments, this construction does not seem in any way to conflict with the views expressed by the supreme court in Robertson v. Oelschlaeger, and the doctrine of principal use recognized in that case.

The question is raised that the petitioner is not an institution "incorporated or established" for any of the purposes mentioned in paragraph 585. Upon this point the evidence shows that one of the purposes for which the hospital was established was educational, although that may not have been the principal design.

The decision of the board of general appraisers is reversed.